# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BRONYA BOYKIN-SULLIVAN,**

      **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**Civil Action 2:19-cv-4115**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Plaintiff, Bronya Boykin-Sullivan ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 5). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff filed her application for Title II Social Security Benefits on June 13, 2016, alleging that she had been disabled since December 23, 2015. (R. 152.) On March June 26, 2018, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Jeannine Lesperance (the "ALJ"). (*Id.* at 30–64.) Plaintiff, represented by counsel, appeared and testified. Vocational expert Connie

O'Brien (the "VE") also appeared and testified at the hearing. On September 20, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15–25.) On July 16, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 10), Plaintiff raises two contentions of error: (1) the ALJ's decision that Plaintiff's impairments do not meet Listing 11.09B (Multiple Sclerosis) of 20 C.F.R. Part 404, Subpart P, Appendix 1 was not supported by substantial evidence; and (2) the ALJ failed to consider the opinion of evaluating neuropsychologist Jeffrey Madden, Ph.D.

## II. THE ALJ'S DECISION

On September 20, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–25.) At step one of the sequential evaluation process,[1] the ALJ determined that Plaintiff engaged in substantial gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

during the period of December 7, 2015, through December 23, 2015, but that there had been continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity. (*Id.* at 17.) At step two, the ALJ found that Plaintiff has the severe impairment of multiple sclerosis with neurocognitive manifestations. (*Id.* at 18.) She further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–19.) Specifically, the ALJ considered Listing 11.09 (Multiple Sclerosis) and Listing 12.02 (Neurocognitive Disorders).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl and balance. The claimant is precluded from climbing ladders, ropes, and scaffolds, occupational driving, and exposure to work hazards, such as unprotected heights and moving mechanical parts. Mentally, the claimant can perform simple, routine tasks at an average pace without strict time or production demands. The claimant can adapt to occasional changes in work duties.

(R. 20.) At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 25.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises two issues in her Statement of Errors (ECF No. 10): (1) the ALJ's decision that Plaintiff's impairments do not meet Listing 11.09 (Multiple Sclerosis) of 20 C.F.R. Part 404, Subpart P, Appendix 1 was not supported by substantial evidence; and (2) the ALJ

4

failed to consider the opinion of evaluating neuropsychologist Jeffrey Madden, Ph.D. The undersigned will consider each assertion of error in turn.

**A.     The ALJ's decision that Plaintiff's impairments do not meet Listing 11.09 is supported by substantial evidence.**

In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). The claimant shoulders the burden of producing medical evidence that establishes that all of the elements are satisfied. It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Here, Plaintiff challenges the ALJ's finding that her impairments do not meet Listing 11.09B (Multiple Sclerosis). The relevant Listing provides:

> 11.09 Multiple sclerosis, characterized by A or B:
>
> > A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> >
> > B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> >     1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> >     2. Interacting with others (see 11.00G3b(ii)); or
> >     3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

    4. Adapting or managing oneself (see 11.00G3b(iv)).[3]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09. Plaintiff does not argue that she meets the criteria of Listing 11.09A, but she contends that the ALJ erred when she concluded that Plaintiff did not meet the criteria of Listing 11.09B.

In finding that Plaintiff did not meet the criteria of Listing 11.09B, the ALJ explained as follows:

> Furthermore, as established below, the claimant does not have a marked limitation in physical functioning AND in the paragraph B criteria.
>
> * * *
>
> In understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, the claimant has a moderate limitation. As illustrated in greater detail below, the medical record demonstrates that the claimant has multiple sclerosis with neurocognitive manifestations. While the claimant has exhibited some positive neurocognitive exam findings, which warrant moderate limitations, the totality of evidence does not support more restrictions. For instance, during a neuropsychological evaluation in March and April 2016, the claimant was noted to be a "very high level functioning individual" (4F). Moreover, the record demonstrates that the claimant's reported limitations are related primarily to her physical symptomatology. The claimant is not limited in interacting with others. She is typically pleasant and cooperative at examinations (e.g. 4F/5). At her neuropsychological evaluation she was noted to be calm with a euthymic (normal) mood (Id.). Her mental status was "intact to casual conversation" (2F/5). Dr. Boster opined that she did not have a marked limitation in interacting with others but did not offer any opinion as to whether she was unlimited, mildly or moderately limited (9F). She is noted to be raising two young children and takes them out to places like the park (9F/6). I find that no limitation in the social domain is warranted on this record.

(R. 19–20.) Because Plaintiff did not exhibit a "marked" limitation in any of the four areas of mental functioning enumerated in Listing 11.09B, the ALJ concluded the Listing was not met. (*Id.* at 20.)

---

[3] These four aspects of mental functioning are sometimes referred to as the "paragraph B criteria," as they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

The ALJ's conclusion that Plaintiff did not exhibit "marked" limitations in any of the paragraph B criteria is supported by substantial evidence. An individual has a marked limitation in mental functioning when, "due to the signs and symptoms of [their] neurological disorder, [they] are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00G(2)(b).

The ALJ reasonably concluded that the record as a whole does not support a finding that Plaintiff is "seriously limited" in this way. The only "marked" limitations Plaintiff argues for are in the domains of understanding, remembering, or applying information, and concentrating, persistence, or maintaining pace. (Statement of Errors 20, ECF No. 10.) In support, Plaintiff points out that her treating physician, Aaron Boster, M.D., checked boxes on a Multiple Sclerosis Medical Source Statement dated February 27, 2018, indicating that Plaintiff had marked limitations in these two domains. (R. 736.) However, the ALJ appropriately discounted Dr. Boster's opinion under 20 C.F.R. § 404.1527(c)(2) as unsupported by Dr. Boster's own treatment notes (which document Plaintiff's complaints of difficulty with cognition, but do not indicate the serious limitations necessary for a "marked" limitation finding under the Listing) and inconsistent with cognitive testing outcomes (which remained in the average and above-average range in most domains and subtests). (R. 21, 23.) For example, in the ALJ's step four analysis,[4] she cites a March 30, 2016 neuropsychological evaluation by Jeffrey Madden, Ph.D., noting fluent speech, logical and goal directed thought, intact thought associations, good insight and judgment, intact memory, attention, concentration, and fund of knowledge (R. 463), high-

---

[4] The Court must consider all factual findings throughout the ALJ's decision to evaluate the sufficiency of the ALJ's step three analysis. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding at most harmless error as to the ALJ's step three analysis when "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three.").

7

average immediate memory, average delayed memory, average attention, average visuospatial construction abilities, and average language skills (R. 464), average IQ, high-average verbal comprehension, low-average perceptual organization, low-average working memory, and low-average processing speed (R. 468), average cognitive speed, efficiency of information, and cognitive flexibility (R. 469), average receptive & expressive language, verbal reasoning, and comprehension (R. 469), average visual processing, visual perception and judgment, and problem-solving using visual stimuli (R. 470), above-average verbal memory (R. 470), below-average visual memory (R. 470), and average executive function (R. 471). The ALJ also cites treatment notes dated July 1, 2015, from Dr. Boster, noting Plaintiff's "[n]ormal language function regarding fluency and comprehension." (R. 235.) Thus, the ALJ's conclusion that Plaintiff did not have a marked limitation in any of the paragraph B criteria was supported by substantial evidence.

Further, the ALJ acknowledges that Plaintiff experienced cognitive decline as a result of her multiple sclerosis, but observed that the "decline was from a very high baseline." (R. 21.) Dr. Madden's neuropsychological examination, on which Plaintiff relies, reflects that Plaintiff "presents with a notable decline in cognitive functioning as compared to her *above average premorbid functioning*." (R. 467) (emphasis added.) Thus, the fact that Plaintiff has experienced decline in cognitive functioning does not necessarily mean that she is markedly limited in mental functioning as required by the Listing. Similarly, although certain medical sources recommended that Plaintiff cut back on her working hours due to cognitive decline and fatigue (*see* Neuropsychological Evaluation by Dr. Madden, R. 467, 473; Treatment Notes by Plaintiff's treating physician, Matthew C. Carrerro, M.D., R. 353), the ALJ noted that those recommendations "relate primarily to the need to be off her current stressful and highly skilled

work [as a staff psychiatrist at a state hospital]. However, this does not demonstrate that the claimant cannot perform other work." (R. 21.) The undersigned agrees that Plaintiff's inability to perform highly-skilled, high-stress work does not, by itself, imply that Plaintiff has marked limitations in mental functioning.

Plaintiff's arguments for the insufficiency of the ALJ's step three analysis lack merit. First, Plaintiff contends that although the ALJ relied on "the totality of the evidence" to find Plaintiff did not have a marked limitation of the paragraph B criteria, the ALJ "offers no support for this statement within the Listings analysis" and that "nowhere else in her decision does the ALJ substantively analyze [Plaintiff's] limitations in these areas." (Statement of Errors 14, ECF No. 10.) However, as the undersigned discussed *supra*, the ALJ further analyzed Plaintiff's mental functioning in the step four analysis. This was sufficient for the ALJ to meet her burden at step three. *See Forrest*, 591 F. App'x at 366.

Plaintiff further asserts that the ALJ improperly relied on a phrase from Dr. Madden's evaluation—that Plaintiff is "very high functioning"—which she maintains was taken out of context. In her step three analysis, the ALJ states, "during a neuropsychological evaluation in March and April 2016, the claimant was noted to be a 'very high functioning individual.'" (R. 19.) The full passage from Dr. Madden's evaluation reads, "[Plaintiff]'s performance on this battery of neuropsychological tests is consistent with a very high functioning individual who is suffering neurocognitive symptoms consistent with Multiple Sclerosis. I believe at least a modification of her employment is most advisable at this time." (R. 473.) Although the ALJ did not quote the entire passage, the undersigned does not find Dr. Madden's full passage to be inconsistent with the ALJ's findings that Plaintiff has suffered cognitive decline from a very high baseline, such that her current cognitive functioning is not markedly limited.

Finally, Plaintiff takes issue with the ALJ's statement that "the record demonstrates that the claimant's reported limitations are related primarily to her physical symptomology." (R. 19.) In support, Plaintiff sets forth many occasions in the record on which Plaintiff complained of cognitive symptoms to her providers and evaluators. (Statement of Errors 16–20, ECF No. 10.) Yet nearly all of these instances document only unspecified "difficulty" with or "worsening" cognition, and do not indicate whether Plaintiff's mental functioning limitations are marked. Plaintiff has therefore failed to identify evidence demonstrating that she meets the criteria of Listing 11.09B, for which she carries the burden at step three. *Sullivan*, 493 U.S. at 530; *Dorton*, 789 F.2d at 367.

Moreover, even if the record evidence might support a finding that Plaintiff had a marked limitation in one or more of the paragraph B criteria, the substantial evidence supporting the ALJ's decision discussed *supra* means that the ALJ's findings were within the her permissible "zone of choice," and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406; *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In sum, the undersigned finds that the ALJ's conclusion that Plaintiff does not have a "marked" limitation in any of the paragraph B criteria was supported by substantial evidence. As a result, it was not error for the ALJ to conclude that Plaintiff's impairments did not meet the criteria of Listing 11.09B.

**B.      The ALJ did not err in her consideration of Dr. Madden's opinion.**

Plaintiff contends that the ALJ failed to consider the March 30, 2016 neuropsychological evaluation by Dr. Madden when crafting Plaintiff's RFC. (Statement of Errors 24, ECF No. 10.)

Specifically, Plaintiff asserts the ALJ should have adopted Dr. Madden's opined limitation that Plaintiff should move from full-time to part-time work. (*Id.*) Plaintiff asserts that Dr. Madden's report is a medical opinion that the ALJ was required to consider under 20 C.F.R. § 404.1527(c) and that she failed to do so.

All medical source opinions, including those of non-treating consultative examiners like Dr. Madden, must be meaningfully evaluated according to the factors set forth in 20 CFR § 404.1527(c). However, opinions of consultative examiners are not entitled to any particular deference and an ALJ need not give "an exhaustive factor-by-factor analysis" of their opinions. *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015) (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)). Because a consultative examiner usually meets with the claimant only once, they usually do not have an on-going treatment relationship with the claimant to trigger the deference owed to treating physicians. *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245–46 (6th Cir. 2018) (the absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017)).

The ALJ did not err in her consideration of Dr. Madden's opinion. First, the ALJ did not fail to consider Dr. Madden's opinion altogether, as Plaintiff contends. Although Plaintiff correctly points out that the ALJ never mentioned Dr. Madden by name and did not devote any particular section of the decision to Dr. Madden's opinion, the decision reflects that the ALJ meaningfully considered the opinion when she quoted from it as to Plaintiff's "very high functioning" and cited the above-average and average results of her cognitive testing summarized *supra*. (R. 19, 21.)

11

Further, the only opined limitation Plaintiff contends should have been included in the RFC is Dr. Madden's restriction of Plaintiff to part-time work. Yet, as noted above, this limitation was recommended from the baseline of Plaintiff's high-level and high-stress job as a psychiatrist, and does not bear on whether Plaintiff could perform other full-time work.

Moreover, Dr. Madden's recommendation does not constitute a definitive limitation. Dr. Madden's report states only that, "[b]ased on this profile [of neuropsychological testing results], I *believe* it would be *prudent* for [Plaintiff] to *consider* at least a reduction to work at part time *for the time being*" and "I *believe* at least a modification of her employment is *most advisable* at this time." (R. 467, 473) (emphasis added.) These statements do not provide the ALJ with definitive limitations to incorporate into the RFC. *See Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion."). For this additional reason, undersigned finds that the ALJ did not err in failing to include Dr. Madden's non-definitive limitation in Plaintiff's RFC.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE