**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

BRONYA BOYKIN-SULLIVAN,

        Plaintiff,        :    Case No. 2:19-cv-4115

  - vs -                         Judge Sarah D. Morrison
                              Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

                              :

        Defendant.

**OPINION AND ORDER**

Bronya Boykin-Sullivan ("Plaintiff") brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits. This matter is before the Court on Plaintiff's Objection (ECF No. 14) to the Report and Recommendation ("R&R") issued by the United States Magistrate Judge on April 10, 2020 (ECF No. 13), recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff filed an application for Title II Social Security Benefits on June 13, 2016, alleging disability since December 23, 2015. (Admin. Record, 34, 152, ECF No. 5). Plaintiff's claims were denied initially on August 2, 2016, and upon reconsideration on September 22,

1

2016. (*Id.* at 85–87; 90–92). She filed a Request for Hearing on November 3, 2016. (*Id.* at 97–99).

Administrative Law Judge Jeannine Lesperance ("ALJ") held an administrative hearing on June 26, 2018. (*Id.* at 30–64). On September 20, 2018, the ALJ issued an unfavorable decision. (*Id.* at 15–25). Plaintiff requested review of the administrative decision to the Appeals Council, which denied her request on July 16, 2019, and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 1–6).

Plaintiff filed this case on September 16, 2019 (ECF No. 1), and the Commissioner filed the administrative record on November 20. (ECF No. 5). Plaintiff filed a Statement of Specific Errors (ECF No. 10), and the Commissioner responded (ECF No. 12). On April 10, 2020, the Magistrate Judge issued her Report and Recommendation. (ECF No. 13). After a thorough analysis, the Magistrate Judge recommended affirming the Commissioner's non-disability finding. On April 24, Plaintiff timely filed an Objection to the Magistrate Judge's R&R. (ECF No. 14).

    **B.**    **Relevant Record Evidence**

        **1.**    **Hearing Testimony**

Plaintiff, represented by counsel, appeared and testified at the administrative hearing. Plaintiff has a medical degree with a residency in psychiatry, during which she also served in the Air Force. (R. at 38). She worked as a practicing psychiatrist from 2002 through December 23, 2015. (*Id.* at 35, 39). While she was still working as a psychiatrist, she utilized a computer approximately 45 percent of the time. (*Id.* at 41).

Plaintiff suffers from an "aggressive highly active phenotype of . . . multiple sclerosis." (*Id.* at 35–36). Plaintiff testified that she is no longer able to do any full-time work because she is

"so fatigued." (*Id.* at 42). She testified that she drives daily to take her kids to school and to run errands. (*Id.* at 37–38). But by the time she gets home, she is "completely tired." (*Id.* at 42). Plaintiff stated that she usually "tank[s] out" by 9:00 or 10:00 a.m. each day. (*Id.* at 50). She testified that she misses "anything where you have to exert any kind of effort." (*Id.* at 43). Plaintiff explained that her decline from being able to work full-time to not involved a lot of other people covering for her so that she did not make significant mistakes while seeing patients as she started becoming more fatigued. (*Id.* at 44). She generally utilizes a motorized cart to get around the grocery store. (*Id.* at 51). She gets takeout food a lot because she often does not have the energy to cook and clean up afterwards. (*Id.*). She testified that she has someone who comes to her house Monday through Thursday from 3:00pm until 8:00pm to help with chores and with her children. (*Id.* at 47–48). Plaintiff is fatigued even sitting for long periods of time. (*Id.* at 52).

Plaintiff testified that cognitively, she has very bad short-term memory and easily comes off task. (*Id.* at 45). That causes her to become frustrated and depressed. (*Id.* at 47). She has trouble watching television because she cannot follow what is happening, but she does do water aerobics with other people with multiple sclerosis. (*Id.* at 49).

Vocational Expert Connie O'Brien ("VE') also testified. The VE classified Plaintiff's past relevant work as a psychiatrist and a medical resident as requiring a light exertion level. (*Id.* at 56). The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE that limited Plaintiff to sedentary work but she could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, or balance, never climb ladders, ropes, or scaffolds, not work around hazards, not engage in occupational driving, could perform simple, routine tasks

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

3

at an average pace without strict time or production demands, and could adapt to occasional changes in work duties. (*Id.* at 56–57). The VE testified that given these limitations, Plaintiff could not perform her past work as actually or generally performed. (*Id.* at 57). However, the VE testified that there was other sedentary, unskilled work a person of Plaintiff's age, education, and past work experience could perform within the limitations of the hypothetical including, order clerk, callout operator, and charge account clerk. (*Id.*). The VE testified that it would be work preclusive if Plaintiff was off task for more than 10 percent of the workday or was absent two days per month. (*Id.* at 58). She also testified that at the sedentary exertion level there are no jobs that would allow Plaintiff to handle and finger for only four hours in an eight-hour workday. (*Id.* at 60).

### 2. Dr. Madden's Medical Opinion

Plaintiff saw Jeffrey Madden, Ph.D., for a neuropsychological evaluation on March 28 and April 15, 2016 (*Id*. at 460). Dr. Madden noted that Plaintiff began experiencing symptoms of multiple sclerosis 12 years prior, but it was only in 2013 that the disease began to significantly affect her with the development of optic neuritis in her right eye. (*Id.*). Plaintiff reported to Dr. Madden the following cognitive problems: verbal fluency, cognitive fog that lasts for up to a day, forgetting medical information, losing things, having difficulty pronouncing words, and making paraphasic errors. (*Id.* at 461). Dr. Madden reported the following initial behavioral observations of Plaintiff: no psychomotor abnormalities, fluent speech, logical and goal directed flow to thought, intact thought associations, good judgment, alert and oriented to person, place, and time, recent intact memory, intact concentration, language within normal limits, and intact fund of knowledge. (*Id.* at 463). After undergoing a battery of neuropsychological tests, Dr. Madden noted:

> [Plaintiff] presents with a **notable** decline in cognitive functioning as compared to her above average premorbid functioning. The pattern of cognitive difficulties reported by the patient appears consistent with test findings with problems in: Attention/working memory . . . Subjective difficulties with verbal memory which appear to be resulting from a pattern of new information interfering with the recall of previous learned information . . . A relative decline in visual memory that may be a function of visual compromise caused by MS. While problem solving as a whole appears unchanged, [Plaintiff] has significant difficulty with a task that combines attention/working memory with reasoning skills. . . . Based on this profile, I believe it would be prudent for [Plaintiff] to consider at least a reduction to work at part time for the time being.

Dr. Madden concluded that Plaintiff's performance was "consistent with a very high functioning individual who is suffering from neurocognitive symptoms consistent with Multiple Sclerosis." (*Id.* at 473). He added that he believed "at least a modification of her employment is most advisable at this time." (*Id.*).

### C. The ALJ's Decision

The Magistrate Judge accurately described the ALJ's decision. (*See* R&R, 2–3, ECF No. 13). At step four of the sequential process,[2] the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl and balance. The claimant is precluded from climbing ladders, ropes, and scaffolds, occupational driving, and exposure to work hazards, such as unprotected heights and moving mechanical parts. Mentally, the claimant can perform simple, routine tasks at an average pace without strict time or production demands. The claimant can adapt to occasional changes in work duties.

(R. at 19–20).

Relying on the VE's testimony, the ALJ determined that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 25). She therefore concluded that Plaintiff was not disabled under the Social Security Act

---

[2] *See* R&R, fn.1, ECF No. 13.

5

during the relevant period. (*Id*.).

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III. ANALYSIS

In her Statement of Specific Errors, Plaintiff asserts two assignments of error, only one of which forms the basis of her Objection to the Magistrate Judge's R&R. Plaintiff argues that the ALJ should have adopted Dr. Madden's opined limitation that Plaintiff should move from full-time to part-time work. In essence, Plaintiff asserts the ALJ, and the Magistrate by extension, improperly failed to consider Dr. Madden's medical opinion under 20 C.F.R. § 404.1527(c).

In her opinion, the Magistrate Judge properly notes that while medical opinions of non-treating consultative examiners like Dr. Madden must be meaningfully evaluated, they are not entitled to any particular deference and an ALJ need not give "an exhaustive factor-by-factor analysis" of their opinions. (R&R, 11, quoting *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015)). After carefully reviewing the record *de novo*, this Court finds the

6

Magistrate Judge's assessment of the ALJ'S decision as it pertains to Dr. Madden's medical opinion proper and adopts it here:

> The ALJ did not err in her consideration of Dr. Madden's opinion. First, the ALJ did not fail to consider Dr. Madden's opinion altogether, as Plaintiff contends. Although Plaintiff correctly points out that the ALJ never mentioned Dr. Madden by name and did not devote any particular section of the decision to Dr. Madden's opinion, the decision reflects that the ALJ meaningfully considered the opinion when she quoted from it as to Plaintiff's "very high functioning" and cited the above-average and average results of her cognitive testing summarized *supra*. (R. 19, 21.)
>
> Further, the only opined limitation Plaintiff contends should have been included in the RFC is Dr. Madden's restriction of Plaintiff to part-time work. Yet, as noted above, this limitation was recommended from the baseline of Plaintiff's high-level and high-stress job as a psychiatrist, and does not bear on whether Plaintiff could perform other full-time work.
>
> Moreover, Dr. Madden's recommendation does not constitute a definitive limitation. Dr. Madden's report states only that, "[b]ased on this profile [of neuropsychological testing results], I *believe* it would be *prudent* for [Plaintiff] to *consider* at least a reduction to work at part time *for the time being*" and "I *believe* at least a modification of her employment is *most advisable* at this time." (R. 467, 473) (emphasis added.) These statements do not provide the ALJ with definitive limitations to incorporate into the RFC. *See Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96- 8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion."). For this additional reason, undersigned finds that the ALJ did not err in failing to include Dr. Madden's non-definitive limitation in Plaintiff's RFC.

(R&R, 11–12).

Plaintiff's argument in her Objection does nothing to cast doubt on the Magistrate Judge's analysis. The Court disagrees with Plaintiff that *Graham* and *Slivka* are distinguishable

from the case sub judice such that the legal holdings cited by the Magistrate Judge regarding definitive limitations are inapplicable to the facts here. Moreover, the ALJ's failure to assign a specific weight to Dr. Madden's non-treating medical opinion does not negate that the ALJ explicitly considered Dr. Madden's neuropsychological evaluations of Plaintiff in reaching her decision. (R. at 20–23); *cf. Cole v. Astrue*, 661 F.3d 931, 938–39 (6th Cir. 2011) (noting that the failure to assign any weight to a *treating* physician's opinion constitutes error requiring remand).

Accordingly, the Court finds, as did the Magistrate Judge, that the ALJ properly considered all of the evidence before her and concluded that Plaintiff was not disabled. Plaintiff's Objection is **OVERRULED**.

## IV.     CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 14), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 13), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE